# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

GARY BROWN, JR.,                      :

      Plaintiff,               :
                            Case No. 3:14cv00135

 vs.                                   :

                            District Judge Walter Herbert Rice

CAROLYN W. COLVIN,                    :    Chief Magistrate Judge Sharon L. Ovington
Acting Commissioner of the Social
Security Administration,              :

      Defendant.               :

## REPORT AND RECOMMENDATIONS[1]

## I.    Introduction

      Plaintiff Gary Brown, Jr. brings this case challenging the Social Security Administration's denial of his application for Disability Insurance Benefits.  He asserts here, as he did before the administration, that he has been under a benefits-qualifying disability – starting on April 7, 2007 – due to a spinal injury, nerve damage to his legs, and an inability to move his left foot.

      The case is presently before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #11), the administrative record (Docs. #s 6, 7), and the record as a whole.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

## II.  Background

### A.  Plaintiff's Testimony

Plaintiff was 33 years old on his alleged disability onset date, placing him in the category of a "younger person" for purposes of resolving his application for Disability Insurance Benefits.  *See* 20 C.F.R. § 404.1563(c).  He has a high school education.  His past relevant employment includes work as a cook, hand packager, and bending machine operator.

At his administrative hearing in August 2012, Plaintiff testified he is about 5' 7" tall and weighs approximately 140 pounds.  His apartment was involved in an apartment fire the night before the hearing so Plaintiff was displaced and staying with his parents temporarily.  He lived at the apartment for two months with his girlfriend before the fire.  It was on the first floor.  He testified his girlfriend receives Supplemental Security Income, and the nature of her disability is that "she has trouble making tough decisions."  (*PageID#* 92).  Plaintiff has a driver's license but no car.  His attorney drove him to the hearing after his father dropped him off at the attorney's office.

Plaintiff previously worked as a cook at a Frisch's restaurant and as a hand packager at a factory.  He had no earnings since 2008.  He testified that his girlfriend has supported him financially since 2006 or 2007.

Plaintiff asserted that he can no longer work due to his back pain, his inability to read, and his limited ability to stand, sit, walk, and lift.  He estimated he can only stand for

5 minutes, can only walk for less than a block, and can only sit for approximately 30 minutes.  He does not have any trouble using his arms, hands, or fingers, but he can only lift 5 to 10 pounds.  Plaintiff is on pain medication and anti-depressants.  He sees a psychiatrist every 3 months and a counselor once a month.  He explained that he has depression, worries about things, and gets nervous. He also has knee pain.

Plaintiff's girlfriend mainly did the chores in their apartment, but he would go grocery shopping with her.  He does not have any hobbies or pets.  Plaintiff testified that, during a typical day, "I normally lay down because I'm not in pain when I'm laying down. That's when it helps me the most."  (*PageID* # 98).

Plaintiff only drives about once a month.  When he does drive, he goes to the doctor's office or the grocery store.  When Plaintiff was younger, he was involved in a serious car accident.  He was told he would be paralyzed by the time he is age 40.  This is something he still worries about.  Because of the accident, he can no longer move his right toe and he has ongoing nerve damage in his legs.

Plaintiff has been told he has a "drop foot."  (*PageID* # 102).

**B.**   **Medical Evidence**

The administrative record contains many medical records plus opinions from Plaintiff's treating and non-treating medical sources.  A detailed description of those records and opinions is unnecessary because the undersigned has reviewed the entire administrative record and because both the Administrative Law Judge and Plaintiff's

3

counsel have accurately summarized the relevant records with citations to specific evidence.  The Commissioner likewise defers to the Administrative Law Judge's (ALJ's) factual recitation.

## III.    **<u>"Disability" Defined and the ALJ's Decision</u>**

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements.  *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1)(D).  The term "disability" – as defined by the Social Security Act – has specialized meaning of limited scope.  It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job – *i.e.,* "substantial gainful activity," in Social Security lexicon.[2]  42 U.S.C. § 423(d)(1)(A); *see Bowen*, 476 U.S. at 469-70.

To determine whether Plaintiff was under a benefits-qualifying disability, ALJ Amelia G. Lombardo applied the Social Security Administration's 5-Step sequential evaluation procedure.  *See* 20 C.F.R. § 404.1520(a)(4).  Steps 2, 3, and 4 are the most significant in this case.

At Step 2, the ALJ concluded that Plaintiff had several impairments, namely, "borderline intellectual functioning, mild lumbar scoliosis, mild degenerative disc disease,

---

[2] In addition, the impairment must be one "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

4

and mild left foot drop."  (*PageID* # 72).

At Step 3, the ALJ concluded that Plaintiff's impairments or combination of impairments did not meet or equal the criteria in the Commissioner's Listing of Impairments.

At Step 4, the ALJ concluded that despite Plaintiff's impairments, he could perform light work "except that he must be allowed a brief change in positions between sitting and standing every 30 minutes during an eight hour workday.  Furthermore, he is limited by his borderline intellectual functioning to unskilled work as defined by the Dictionary of Occupational Titles."  (*PageID* # 76).  Given these abilities and limitations, he cannot perform his past relevant work, but he is able to perform a significant number of jobs that exist in the national economy.

The sum and substance of the ALJ's sequential evaluation ultimately led her to conclude that Plaintiff was not under a benefits-qualifying disability.

## IV.   **Judicial Review**

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains

evidence contrary to those factual findings.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708,

722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Instead, the ALJ's factual findings are upheld if the substantial-evidence

standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as

adequate to support a conclusion.'"  *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r

of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).  Substantial evidence consists of

"more than a scintilla of evidence but less than a preponderance . . . "  *Rogers*, 486 F.3d at

241; *see Gentry*, 741 F.3d at 722.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal

criteria – may result in reversal even when the record contains substantial evidence

supporting the ALJ's factual findings.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d

647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746.  "[E]ven if supported by substantial

evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to

follow its own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting in part

*Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

546-47 (6th Cir. 2004)).

**V.**     **Discussion**

    **A.**     **Medical Source Opinions**

Plaintiff contends that the ALJ failed to give appropriate weight to the opinions of

treating physician Dr. Kinkopf under Social Security's own Rules and Regulations as well as Sixth Circuit case law.

The Commissioner argues that the ALJ reasonably weighed Dr. Kinkopf's opinions, finding that his opinions were inconsistent with his own treatment notes and other medical evidence of record.

Social security regulations recognize several different types of medical sources: treating physicians, nontreating yet examining physicians, and nontreating/record-reviewing physicians.  *Gayheart v. Comm'r Social Sec.*, 710 F.3d 365, 375 (6th Cir. 2013).

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source").  In other words, the regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."  Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

*Gayheart*, 710 F.3d at 375 (citing, in part, 20 C.F.R. §§ 404.1527(c)(1) and (2) (eff. April 1, 2012)).[3]  To effect this hierarchy, the Regulations adopt the treating physician rule.  *See Gayheart*, 710 F.3d at 375; *see also Rogers*, 486 F.3d at 242; *cf. Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) ("in fact the technical name for the 'treating physician' rule is the 'treating source' rule").  The rule is straightforward:

---

[3] The Social Security Administration has re-lettered 20 C.F.R. §404.1527 without altering the treating physician rule or other legal standards.  *See Gentry*, 741 F.3d at 723.  The re-lettered version applies to decisions, like ALJ Lombardo's decision, issued on or after April 1, 2012.

Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with other substantial evidence in [a claimant's] case record."

*Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. §404.1527(c)(2)); *see Gentry*, 741 F.3d at

723.  If both conditions do not exist, the ALJ's review must continue:

When the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors.

*Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

As to non-treating medical sources, the regulations require ALJs to weigh their

opinions "based on the examining relationship (or lack thereof), specialization,

consistency, and supportability, but only if a treating-source opinion is not deemed

controlling."  *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. §404.1527(c)).

In Plaintiff's administrative case, ALJ Lombardo weighed the medical source

opinions as follows:

Little weight is given to the opinion of the claimant's treating physician, Dr. Kinkopf, because Dr. Kinkopf diagnosed mental retardation, yet he has no credentials as a mental health professional.  Dr. Kinkopf assessed the claimant's physical capacities at less than the sedentary exertion level, but that assessment is inconsistent with his own report of findings and the other objective medical evidence of record, which has been discussed and summarized herein above with references to the record (15F). Therefore, little weight is given to that opinion.

8

> Some weight, but not great weight, has been given to the opinion of the State Agency with respect to the determination of the claimant's residual functional capacity (1A and 3A).  However, evidenced received at the hearing level shows that the claimant's impairments are not as severe as believed by the State Agency evaluators.

(*PageID*# 78).

Substantial evidence does not support the ALJ's evaluation of Dr. Kinkopf's opinion, particularly the ALJ's finding that Dr. Kinkopf's opinions are inconsistent with his own "report of findings."  *Id*.  On July 14, 2010, Dr. Kinkopf stated that Plaintiff could stand/walk for 3 out of 8 hours, and for 15 minutes uninterrupted.  He could sit for 3 out of 8 hours and sit uninterrupted for 30 minutes.  He could frequently lift/carry up to 5 pounds and frequently lift/carry up to 10 pounds.  He was moderately limited in his ability to push/pull.  He was markedly limited in his ability to bend.  He was extremely limited in his ability to perform repetitive foot movements.  His impairments were expected to last 12 months or more.  (*PageID*# 572).  Dr. Kinkopf believed that Plaintiff was unemployable for 12 months or more.  *Id*. at 574.

On August 5, 2010, Dr. Kinkopf reported that Plaintiff is "also affected by chronic low back pain as well as left foot drop that affects his ambulation and ability to stand for any length of time.  The patient must **sit and lay down frequently** due to his chronic low back pain."  *Id*. at 329 (emphasis added).  On March 11, 2011, Dr. Kinkopf stated, "This patient is not capable of gainful employment due to chronic pain in thoracic and lumbar spine and severe bilateral knee pain." *Id*. at 474.  He stated, moreover, that Plaintiff was

9

"gradually getting worse." *Id*. at 475.

Contrary to the ALJ's findings, Dr. Kinkopf's treatment notes show that Mr. Brown was treated for degenerative joint disease of his knees, left ankle sprain, left foot pain, back pain, and chest pain. (PageID#s 330, 334-335, 338-41, 343-49, 474). On examinations, Plaintiff had left foot drop, and positive McMurray's sign, decreased range of motion of his thoracic and lumbar spine, muscle spasms, antalgic gait, lower extremity weakness, and tenderness. (PageID#s 338-49, 474, 477, 485, 487, 491, 493, 571, 579, 586-87, 589, 614, 627, 635, 638, 736, 743, 763, 766, 768). This probative evidence consists of the types of signs and symptoms that support Dr. Kinkopf's opinions and Plaintiff's testimony about his pain. *Cf.* 20 C.F.R. §4041572(c)(3) (controlling weight is given to medical source opinions that are "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence ...."). Social Security Ruling 96-7p explains, "The examples in the regulations (reduced joint motion, muscle spasm, sensory deficit, and motor disruption) illustrate findings that may result from, or be associated with, the symptoms of pain. When present, these findings tend to lend credibility to an individual's allegations about pain or other symptoms and their functional effects." 1996 WL 374186 at *6. Additionally, a CT scan showed small broadbased disc bulge at L5-S1 with mild bilateral facet hypertrophy. (*PageID*#s 718, 721). An April 19, 2011, knee MRI demonstrated a radial tear posterior horn medial meniscus, small knee joint effusion, and Grade IV chondromalacia medial

patellar facet.  *Id*. at 592-93.  These objective findings also support Dr. Kinkopf's opinion.

The ALJ also erred by not explaining why she placed "some weight" on the opinions of the state agency record-reviewing physicians.  *See* Doc. #6, *PageID#* 78.  The regulations require ALJs to weigh their opinions "based on the examining relationship, (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling."  *Gayheart*, 710 F.3d at 376 (citation).  The ALJ's decision to give some weight to the record-reviewers' opinions without weighing them as the regulations require allowed the ALJ to overlook that these sources provided conclusory reviews of the record and no meaningful explanation to support their opinions.

The Commissioner contends that the ALJ reasonably discounted Dr. Kinkopf's opinion because his opinions were inconsistent with his treatment notes.  The Commissioner reasons, "This is particularly true regarding Dr. Kinkopf's opinion that Plaintiff could not sit for more than 30 minutes at a time, or more than three hours in an eight-hour workday."  (Doc #11, *PageID#* 805).  And, the Commissioner asserts, "Dr. Kinkopf did not include any physical findings regarding Plaintiff's ability to sit, and even wrote, in the same treatment note, that Plaintiff must sit frequently."  *Id*. at 806.  This treatment note, however, reads – in its entirety – "The patient must **sit and lay down frequently** due to his chronic low back pain."  (Doc. #6, *PageID#* 329) (emphasis added).  It is not reasonable to read this note as conflicting with Dr. Kinkopf's opinions about Plaintiff's limited ability to sit.  Although this note contains the words, "sit" and

11

"frequently," it combines sitting with lying down.  Together these two activities – sitting and lying down – must be done frequently, according to Dr. Kinkopf.  His meaning would be different if Dr. Kinkopf had written, "sit or lay down frequently."  Use of the disjunctive "or" would mean that Dr. Kinkopf believed Plaintiff retained the ability to sit frequently (or lie down frequently), as the Commissioner proposes.  That this was not Dr. Kinkopf's meaning is seen not only in his use of the conjunctive "and," it is seen in his explanation that Plaintiff's need to sit and lie down frequently was "due to his chronic low back pain."  When the whole sentence is read, this phrase reads naturally as both a comment on causation and an indication that sitting and lying down frequently would provide Plaintiff with at least some pain relief.  As such, Dr. Kinkopf's use of the words "sit" and "frequently," when read in context, did not contradict, and was not inconsistent with, his opinion that Plaintiff could not sit for more than 30 minutes at a time or more than 3 hours in an 8-hour workday.  The Commissioner's contention to the contrary lacks merit.

The Commissioner also maintains that the ALJ's decision should stand even if deference is given to Dr. Kinkopf's opinions.  The Commissioner points to the vocational expert's testimony that there were a significant number of available sedentary jobs Plaintiff could perform.  This is significant because the sedentary level of exertion is, in the Commissioner's view, "more restrictive than the opinions of the state agency reviewers and conforms with the majority of Dr. Kinkopf's opinion."  (Doc. #11, *PageID#* at 806).

12

This harmless-error argument, *see id.* at 806-07, lacks merit. Dr. Kinkopf's opinion about Plaintiff's need to sit and lie down frequently reasonably limits him to less than sedentary work. *See* Soc. Sec. R. 96-9p, 1996 WL 374185 at *7 ("In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday .... If an individual is unable to sit for a total of 6 hours in and 8-hour workday, the unskilled sedentary occupational base will be eroded...."). The vocational expert's testimony about the number of available jobs says nothing probative about the jobs available to a person with Plaintiff's less-than-sedentary abilities. Consequently, the vocational expert's testimony does not render harmless the ALJ's error in weighing Dr. Kinkopf's opinions. In addition, as discussed above, review of Dr. Kinkopf's treatment notes and objective evidence reveals significant evidence supporting his opinion. It cannot be concluded, therefore, that Dr. Kinkopf's opinion "is so patently deficient that the Commissioner could not possibly credit it...." *Wilson*, 378 F.3d at 547. For these reasons, the ALJ's error in weighing Dr. Kinkopf's opinion was not harmless. *See id*. at 546 ("'[A] procedural error is not made harmless simply because the [aggrieved party] appear to have had little chance of success on the merits anyway.'" (citation omitted)).

On a different tack, Plaintiff argues that the ALJ erred by finding that his left-knee drop did not require him to use a cane for ambulation. "The Commissioner concedes that the evidence shows that Plaintiff regularly used a cane, however, any error by the ALJ was

13

harmless." (Doc. #11, *PageID*# 802). Harmless error is seen, the Commissioner reasons, in the vocational expert's testimony that even if Plaintiff used a cane, he would be able to perform a significant number of sedentary jobs in the national economy. Yet, because Dr. Kinkopf's opinions place Plaintiff in the category of persons with less-than-sedentary work abilities, the vocational expert's identification of sedentary jobs available to a person using a cane for ambulation says nothing about the jobs available to Plaintiff, if Dr. Kinkopf's opinions are credited. It was not, therefore, harmless error for the ALJ to omit Plaintiff's need to use a cane to ambulate due to his left-knee drop.

Accordingly, Plaintiff's Statement of Errors in well taken.[4]

### B.     Remand is Warranted

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F3d at 746. Remand is warranted for an ALJ's failure to follow the regulations, for example, when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson,* 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for

---

[4] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's remaining arguments is unwarranted.

finding the plaintiff to lack credibility, *Rogers*, 486 F.3d at 249.

Under sentence 4 of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence 4 may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is weak. *Faucher v. Sec'y of Health & Humans Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A remand for an award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and because the evidence of disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176. Yet, Plaintiff is entitled to an Order remanding this matter to the Social Security Administration pursuant to sentence 4 of §405(g) due to problems set forth above. On remand the ALJ should be directed to review Plaintiff's disability claim to determine anew whether he was under a benefits-qualifying disability, including, at a minimum, a re-assessment of Plaintiff's residual functional capacity and a re-consideration of the evidence at step 5 of the sequential evaluation.

## IT IS THEREFORE RECOMMENDED THAT:

1.     The Commissioner's non-disability finding be vacated;

15

2.      No finding be made as to whether Plaintiff Gary Brown, Jr. was under a "disability" within the meaning of the Social Security Act;

3.      This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report and a Decision and Entry adopting this Report; and

4.      The case be terminated on the docket of this Court.


June 18, 2015

                                    s/Sharon L. Ovington
                                    Sharon L. Ovington
                        Chief United States Magistrate Judge

16

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).

17